## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RORY M. WALSH,** | : | **CIVIL ACTION NO. 1:05-CV-0818** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **THE UNITED STATES OF AMERICA,** | : | |
| **et al.,** | : | |
| | : | |
| **Defendants** | : | |

### MEMORANDUM

Presently before the court is a motion filed by defendants, the United States

of America, the Department of the Navy, and various current and former naval

officers, to dismiss the claims of *pro se* plaintiff Rory M. Walsh ("Walsh").  For the

reasons that follow, the motion will be granted in part and denied in part.

## I.   Statement of Facts[1]

In 1983 and 1984 Walsh, an United States Marine Corps officer, was stationed

aboard the U.S.S. Inchon in the Mediterranean Sea.  (Doc. 30 ¶¶ 11-14, 17.)  At that

time Richard M. Wenzell ("Wenzell") served as one of the ship's commanding

officers,  Paul D. Roy ("Roy") served as Walsh's reporting senior officer, and an

---

[1]  In accordance with the standard of review for a motion to dismiss, the court
will present the facts as alleged in the complaint.  See FED. R. CIV. P. 12(b)(6);
Empire Kosher Poultry, Inc. v. United Food & Comm'l Workers Health & Welfare
Fund of N.E. Pa., 285 F. Supp. 2d 573, 577 (M.D. Pa. 2003).  Because the plaintiff is
proceeding in this matter *pro se*, the court has liberally construed the pleading's
averments.  See Leamer v. Fauver, 288 F.3d 532, 547-48 (3d Cir. 2002).   The
statements contained herein reflect neither the findings of the trier of fact nor the
opinion of the court as to the reasonableness of the allegations.

individual identified only as "Special Agent West" was a Naval Investigative Service agent assigned to the Inchon. (Doc. 30 ¶¶ 16-17, 20.)

During 1984 West purportedly intercepted and opened Walsh's personal mail and revealed the contents to Roy. (Doc. 30 ¶¶ 16, 17.) Walsh confronted the mail clerk about this impropriety, after which Roy allegedly threatened to "ruin [Walsh's] career" if Walsh disclosed this to Wenzell.[2] (Doc. 30 ¶ 18.) Walsh eventually brought the matter to Wenzell's attention, who did not investigate the allegations, but instead retaliated against Walsh by transferring him to headquarters and ensuring that Walsh not be allowed to become a company commander. (Doc. 30 ¶ 20.)

In July 1985 Jerry D. Humble ("Humble") was assigned to Walsh's unit. (Doc. 30 ¶ 23.) According to the complaint, Humble was involved in two nefarious incidents with Walsh in August 1985. First, while Walsh was briefing another service member, Humble purportedly assaulted Walsh by grabbing his arm and dragging him out of the office. (Doc. 30 ¶ 25.) Second, Humble allegedly—and unbeknownst to Walsh—slipped arsenic into a drink sitting on Walsh's desk. (Doc. 30 ¶ 27.) Immediately after imbibing the beverage Walsh became sick and sought treatment by navy physicians, who were unable to determine the cause of Walsh's illness. (Doc. 30 ¶¶ 28-32.)

---

[2] The complaint also avers that Roy lost classified material on several occasions (see Doc. 30 ¶¶ 9, 16), and confronted Walsh with sensitive information relating to an apparent investigation of Walsh (see Doc. 30 ¶¶ 123-24).

Shortly thereafter Michael J. Byron ("Byron") purportedly disclosed to Walsh classified material relating to the defense of the nation's capital.  (Doc. 30 ¶ 33.)  According to the complaint, Byron placed classified documents on Walsh's desk in January 1986, and allegedly took one of the documents in an attempt to "frame" Walsh for espionage.  (Doc. 30 ¶ 34.)  The following month Byron again attempted to entrap Walsh by placing confidential information in Walsh's mail. (Doc. 30 ¶¶ 36-39.)

Although the complaint does not specify when Walsh was discharged, it does aver that he has endured years of illness since his time in the service.  (Doc.30 ¶ 64.) In June 2003 he was diagnosed with having an arsenic-related disease.  (Doc. 30 ¶ 65.)  In October 2003, while watching a television program on arsenic poisoning, Walsh realized that Humble must have put arsenic in his drink, and is thus responsible for Walsh's deteriorating condition.  (Doc. 30 ¶¶ 65-66.)

On September 24, 2004, Walsh submitted a claim for his injuries to the Department of the Navy pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680.  (Doc. 30 ¶ 6.)  On October 27, 2004 the claim was rejected by Colonel M. W. McErlean ("McErlean").  (Doc. 30 ¶¶ 7, 40, 41.)  McErlean's refusal to conduct an inquiry was allegedly based upon a letter submitted by Major General Thomas F. Ghormley ("Ghormley") to the Board for Correction of Naval Records ("BCNR"). (Doc. 30 ¶ 42.)  This letter also purportedly damaged a then-pending BCNR petition filed by Walsh, and ensured that Walsh was not allowed to return to active military service.  (Doc. 30 ¶ 42.)

3

In 2005 a military official allegedly requested that Walsh return to active duty status to serve in Iraq.  However, Ghormley, purportedly at General James L. Jones' ("Jones") direction, denied the request.  (Doc. 30 ¶ 43.)  According to the complaint, Jones denied this request because Walsh is privy to certain misconduct that occurred while Jones was serving as the commanding officer of a marine expeditionary unit in 1990 and 1991.[3]  (Doc. 30 ¶ 44.)  Most recently, in March 2005, Jones allegedly sent Naval Intelligence Agents to break into Walsh's residence and steal correspondence and Walsh's military hats.  (Doc. 30 ¶¶ 92, 114.)

Walsh commenced the instant action on April 25, 2005.  (See Doc. 1.)  An amended complaint was filed on October 21, 2005.  (See Doc. 30.)  The pleading names as defendants the United States of America, the Department of the Navy, West, Roy, Humble, Byron, Wenzell, McErlean, Ghormley, and Jones.  (See Doc. 1 at 1.)  The pleading asserts that Walsh's circulatory and nervous systems have been permanently damaged as a result of the arsenic poisoning, and that defendants were negligent in failing to investigate the matter.  (Doc. 30 ¶¶ 47-52.)  It sets forth a general claim for violations of Walsh's Fourth Amendment rights, and a claim

---

[3]  Jones also allegedly refused to remove Ghormley's letter from Walsh's file. (Doc. 30 ¶ 42.)

against Humble pursuant to 42 U.S.C. § 1983[4] related to the alleged poisoning.

(Doc. 30 ¶¶ 116-118, 120-121).  The amended complaint also asserts a claim against

Roy for a violation of the Privacy Act, 5 U.S.C. § 552, related to Roy confronting

Walsh with sensitive information uncovered after a naval investigation into Walsh

(Doc. 30 ¶¶ 123-24), claims against Ghormley, Jones, and McErlean pursuant to 42

U.S.C. § 1986 related to placing the letter before the BCNR and denying Walsh "his

constitutional right" to be deployed to Iraq (Doc. 30 ¶¶ 95-103), and claims against

West, Roy, Humble and Wenzell for invasion of privacy/intrusion upon seclusion

related to their alleged tampering of Walsh's mail (Doc. 30 ¶¶ 86-93).  Finally, the

pleading sets forth claims for defendants' alleged violations of various criminal

statutes.[5]

---

[4]  The court notes that the appropriate mechanism for bringing suit against federal officials is via a <u>Bivens</u> cause of action.  <u>See</u> <u>Bivens v. Six Unknown Federal Narcotics Agents</u>, 403 U.S. 388 (1971) (stating cause of action against federal officials); <u>Brown v. Philip Morris</u>, 250 F.3d 789, 800 (3d Cir. 2001) ("A <u>Bivens</u> action, which is the federal equivalent of the § 1983 cause of action against state actors, will lie where the defendant has violated the plaintiff's rights under color of federal law."); <u>Egervary v. Young</u>, 366 F.3d 238, 246 (3d Cir. 2004) ("<u>Bivens</u> actions are simply the federal counterpart to § 1983 claims brought against state officials.").

[5]  These include claims against: (1) Humble pursuant to 18 U.S.C. § 2231 for assault (Doc. 30 ¶¶ 53-57), and pursuant to 18 U.S.C. § 1113 for attempted murder (Doc. 30 ¶¶ 58-68); (2) Byron pursuant to 18 U.S.C. § 798 for unlawful disclosure, related to Byron's disclosure of, and purported attempts to entrap Walsh with, classified material (Doc. 30 ¶¶ 70-79); (3) Ghormley and Jones pursuant to 18 U.S.C. § 1513 for retaliation related to placing a letter before the BNCR (Doc. 30 ¶¶ 105-107); and (4) Jones pursuant to 18 U.S.C. § 1510 for obstruction of criminal investigations related to Jones' use of intelligence agencies to burglarize Walsh's residence (Doc. 30 ¶¶ 109-114).

The instant motion to dismiss argues that the alleged conduct of which Walsh complains occurred while Walsh was on active military duty, and hence are barred by the <u>Feres</u> doctrine.  <u>See</u> <u>Feres v. United States</u>, 340 U.S. 135 (1950).  It also argues that, even if <u>Feres</u> did not apply, the statute of limitations has run on these claims.  (<u>See</u> Doc. 30.)  The motion has been fully briefed and is ripe for disposition.

## II.   <u>Standard of Review</u>

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of claims that fail to assert a basis upon which relief can be granted.  FED. R. CIV. P. 12(b)(6). In the context of a motion to dismiss under Rule 12(b)(6), the court must accept as true all of the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom.  <u>Langford v. City of Atlantic City</u>, 235 F.3d 845, 847 (3d Cir. 2000) (citing <u>Nami v. Fauver</u>, 82 F.3d 63, 65 (3d Cir. 1996)).  Although the court is generally limited in its review to the face of the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  <u>Oshiver v. Levin, Fishbein, Sedran & Berman</u>, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); <u>see also</u> <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice pleading rules do not require plaintiffs to allege affirmatively every aspect of their claims, but only to present sufficient facts to allow the opposing party to conduct discovery and prepare a defense.  <u>See</u> FED. R. CIV. P. 8(a) (stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); <u>see also</u> <u>Conley v. Gibson</u>, 355 U.S.

41, 45-46 (1957).  Thus, courts should not dismiss a complaint for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Id.; see Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002).  Under this liberal pleading policy, courts should generally grant plaintiffs leave to amend their claims before dismissing a complaint that is merely deficient.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).

## III.   Discussion

### A.   Claims Pursuant to the Federal Tort Claims Act[6] and 42 U.S.C. §§ 1983 and 1986

The amended complaint sets forth several claims pursuant to the Federal Tort Claims Act, and to 42 U.S.C. §§ 1983 and 1986 related to incidents that allegedly occurred while Walsh was on active military duty in the mid-1980s.  The instant motion to dismiss argues that these claims are precluded by the Feres doctrine.

The Feres doctrine is a broad bar to suits brought by service members for injuries that "arise out of or are in the course of activity incident to service."  Feres v. United States, 340 U.S. 135, 146 (1950); see also Carley v. Wheeled Coach, 991 F.2d 1117, 1120 (3d Cir. 1993); Ruggiero v. United States, 162 F. App'x 140, 141 (3d

---

[6] The Federal Tort Claims Act is "the exclusive remedy for nonconstitutional torts based on the negligent or wrongful act or omission of any employee of the [federal] government while acting within the scope of his office of employment." Couden v. Duffy, 446 F.3d 483, 498 (3d Cir. 2006) (citation omitted); see also supra note 1.

7

Cir. 2006).  The policy behind the doctrine is threefold.  First, the multifaceted

relationship between a soldier and the military requires a "uniform federal remedy

for service-related injuries."  <u>Feres</u>, 340 U.S. at 689; <u>Ruggiero</u>, 162 F. App'x at 143;

<u>Richards v. United States</u>, 176 F.3d 652, 657 (3d Cir. 1999).  Second, the military's

disability and death benefits structure suggests that Congress did not intend to

waive the government's sovereign immunity for such claims.[7]  <u>See</u> <u>Feres</u>, 340 U.S.

at 690; <u>Ruggiero</u>, 162 F. App'x at 143; <u>Richards</u>, 176 F.3d at 657.  Finally, "judicial

review of military decisions that lead to service-related injuries would undermine

the discipline and loyalty the armed forces need to fulfill their mission."  <u>Ruggiero</u>,

162 F. App'x at 143; <u>Feres</u>, 340 U.S. at 690-91; <u>see also</u> <u>Richards</u>, 176 F.3d at 657.

To determine the applicability of the *Feres* doctrine, a court must review the

service member's duty status at the time of the injury, the location where the

incident occurred, and the nature of the serviceman's activity at the time of the

injury.  <u>See</u> <u>Richards v. United States</u>, 176 F.3d 652, 655-56 (3d Cir. 1999).  Applying

these factors to the matter *sub judice*, it is clear that the <u>Feres</u> doctrine bars the

majority of Walsh's claims.  The alleged pilfering of mail, physical assault, and

poisoning all took place on military property, and while Walsh was on active

military duty performing his military job.  <u>See</u> <u>United States v. Shearer</u>, 473 U.S. 52

(1985) (finding that family of service member could not recover for death of son who

---

[7]  The Federal Employees Compensation Act provides the exclusive remedy
to federal employees for injuries sustained while performing their duties.  <u>See</u> 5
U.S.C. § 8102(a); <u>see also</u> <u>Horton v. United States</u>, 144 F. App'x 931, 932 (3d Cir.
2005).

was kidnapped and murdered by fellow service member); <u>O'Neill v. United States</u>,

140 F.3d 564, 565-66 (3d Cir. 1998) (finding that <u>Feres</u> doctrine barred recovery for

family of service member murdered by co-service member).[8]

Assuming, *arguendo*, that <u>Feres</u> did not apply, these claims accrued almost

twenty years ago and hence are now untimely.  <u>See</u> 28 U.S.C. § 2401(b) ("A tort

claim against the United States shall be forever barred unless it is presented in

writing to the appropriate Federal agency within two years after such claim

accrues . . . ."); 42 U.S.C. § 1986 ("No action under the provisions of this section shall

be sustained which is not commenced within one year after the cause of action has

accrued."); <u>Lake v. Arnold</u>, 232 F.3d 360, 369 (3d Cir. 2000) (stating that in

Pennsylvania § 1983 and § 1985 actions are subject to two-year statute of

---

[8]  <u>See also</u> <u>Richards</u>, 176 F.3d 652 (3d Cir. 1999) (holding that <u>Feres</u> barred
suit for death of service member who was killed when privately owned vehicle
struck by military vehicle); <u>Chappell v. Wallace</u>, 462 U.S. 296, 305 (1983) (holding
that military personnel may not maintain suit to recover damages from a superior
officer for alleged constitutional violations); <u>United States v. Stanley</u>, 483 U.S. 669,
683 (1987) ("[N]o <u>Bivens</u> remedy is available for injuries that arise out of or are in
the course of activity incident to military service."); <u>Speigner v. Alexander</u>, 248 F.3d
1292, 1294-95 (11th Cir. 2001) (holding that <u>Feres</u> bars §§ 1983 and 1986 suits);
<u>Jorden v. Nat'l Guard Bureau</u>, 799 F.2d 99, 100-04 & n.12 (3d Cir. 1986) (holding that
where defendants immune from § 1983 claims because of <u>Feres</u>, then also immune
from § 1985 and § 1986 claims); <u>Jaffe v. United States</u>, 663 F.2d 1226 (3d Cir. 1981)
(holding that <u>Feres</u> barred suit by service members injured by forced nuclear test);
<u>Chappell</u>, 462 U.S. 296 (1983) (holding that <u>Feres</u> barred service member's racial
discrimination claim).  Further, many of Walsh's claims are for alleged violations of
military policies relating to the handling of classified material or internal
investigations procedures.  However, a federal court does not have jurisdiction over
a claim against the government arising from the government's failure to follow its
own regulation or policy.  <u>See</u> <u>Bosco v. United States</u>, 164 F. App'x 226, 229 (3d Cir.
2006).

limitations); <u>Garvin v. City of Phila.</u>, 354 F.3d 215, 220 (3d Cir. 2003) (same); <u>Ormsby v. Luzerne County Dep't of Pub. Welfare</u>, 149 F. App'x 60, 62 (3d Cir. 2005) (same).[9]

Further, the recent alleged burglaries of Walsh's residence, purportedly performed by Naval Intelligence Agents at defendant Jones' instructions, do not constitute a "continuing violation" or "continuing practice" sufficient to toll these limitations periods.  <u>See, e.g.</u>, <u>Soppick v. Borough of West Conshohocken</u>, 118 F. App'x 631, 635 (3d Cir. 2004).  However these acts, if proven, could constitute a violation of Walsh's Fourth Amendment right to be free from unlawful seizures, and of Walsh's Fifth Amendment right to due process of law.  <u>See Peterkin v. Jeffes</u>, 855 F.2d 1021, 1036 n.18 (3d Cir. 1988); <u>see also</u> <u>Gagliardi v. Flint</u>, 564 F.2d 112, 122 n.6 (3d Cir. 1977) (noting that federal Fifth Amendment rights mirror state Fourteenth Amendment rights).  Further, these actions allegedly occurred in 2005, after Walsh had retired from the military, and hence are outside of the confines of <u>Feres</u>.[10]  (<u>See</u> Doc. 30 ¶ 92.)  Finally, because these constitutional rights were well established at the time of the alleged burglary, qualified immunity will not shield defendants from

---

[9] If not for <u>Feres</u> the claims related the alleged poisoning could arguably proceed as Walsh only recently realized that this was the cause of his ills.  <u>See</u> <u>Hughes v. United States</u>, 263 F.3d 272, (3d Cir. 2001) (stating that claim under Federal Tort Claims Act can be tolled "until the putative plaintiff possesses facts which would enable a reasonable person to discover the alleged [injury]" (citation omitted)); <u>see also</u> <u>Barren by Barren v. United States</u>, 839 F.2d 987 (3d Cir. 1988).

[10] Although the complaint indicates that plaintiff is "retired" from the Marine Corps, it does not specify his exact date of discharge.  (<u>See</u> Doc. 30.)  Documents submitted by plaintiff in opposition to the instant motion reflect that he was no longer with the Corps by 1997.  (<u>See</u> Doc. 42, Ex. E at 2.)

suit.  <u>See</u> <u>Saucier v. Katz</u>, 533 U.S. 194, 202 (2001); <u>Bennett v. Murphy</u>, 274 F.3d 133,

136 n.4 (3d Cir. 2002).

Accordingly, defendants' motion to dismiss the claims brought pursuant to

the Federal Tort Claims Act and 42 U.S.C. §§ 1983 and 1986 will be granted with

respect to those incidents occurring while Walsh was in the military.  The motion

will be denied with respect to those claims relating to the alleged burglary of

Walsh's residence in 2005.

### B.  <u>Privacy Act Claims</u>

The amended complaint alleges that, in May 1985, Roy confronted Walsh

with "highly sensitive information" garnered during an investigation of Walsh, and

that Roy "voiced his condemnation [of] the single woman . . . [that Walsh] was

dating at that time."  (Doc. 30 ¶ 123.)  The pleading avers that Walsh has been

damaged as a result of the information's disclosure, and seeks damages against Roy.

(Doc. 30 ¶ 124.)

The Privacy Act affords civil relief for an agency's unauthorized disclosure of

an individual's personal information  <u>See</u> 5 U.S.C. § 552a; <u>Britt v. Naval Inv. Servv.</u>,

886 F.2d 554, 546 (3d Cir. 1989).  It also provides the method by which an individual

may review his or her government records, and institute suit for the agency's

wrongful refusal to amend or correct a record.  <u>See</u> 5 U.S.C. § 552a(g)(1)(A); <u>Duke v.

United States</u>, 305 F. Supp. 2d 478, 478 (E.D. Pa. 2004).

There is a split of authority on whether the <u>Feres</u> doctrine bars Privacy Act

claims.  <u>Compare</u> <u>Cummings v. Dep't of the Navy</u>, 279 F.3d 1051, 1056-57 (D.C. Cir.

2002) (holding that <u>Feres</u> doctrine does not apply to bar service members from filing Privacy Act claim), <u>with</u> <u>Uhl v. Swanstrom</u>, 79 F.3d 751, 754 (8th Cir. 1996) (holding that <u>Feres</u> doctrine barred Privacy Act suit).  Although the Third Circuit has not addressed this precise issue, the court need not resolve it.  Privacy Act claims must be brought against the agency itself—not individuals within the agency.  <u>See</u> 5 U.S.C. § 552a; <u>see also</u> <u>Unt v. Aerospace Corp.</u>, 765 F.2d 1440, 1447 (9th Cir. 1985); <u>Bruce v. United States</u>, 621 F.2d 914, 916 n.2 (8th Cir. 1980).  Accordingly, Roy is not an appropriate defendant for a Privacy Act claim.  Further, the amended complaint does not set forth a specific injury arising from the purported disclosure of information.  <u>See</u> <u>Quinn v. Stone</u>, 978 F.2d 126, 131 & n.6 (3d Cir. 1992) (holding that a plaintiff alleging a Privacy Act claim must demonstrate a "causal nexus between the disclosure and [an] adverse effect [from] that unlawful disclosure").  Finally, as the subject conduct occurred almost twenty years ago, any Privacy Act claims are barred by the Act's two-year statute of limitations.[11]  <u>See</u> 5 U.S.C. § 552a(g)(5); <u>Green v. Westphal</u>, 94 F. App'x 902, 904 (3d Cir. 2004).

---

[11]  Even construing the complaint to aver claims that the defendants failed to correct Walsh's records in violation of the Privacy Act, these claims would be time barred; the pleading and other documents submitted by Walsh demonstrate that these claims were raised and addressed by the military as early as 1999.  (<u>See</u> Doc. 30 ¶¶ 95, 105; Doc. 42, Ex. L.)  <u>See</u> <u>Green v. Westphal</u>, 94 F. App'x 902, 904 (stating that cause of action arises under the Privacy Act when the individual knows or has reason to know of the alleged error in the individual's record and the individual is harmed by the alleged error); <u>Weber v. Henderson</u>, 33 F. App'x 610, 611 (3d Cir. 2002) (same).

Accordingly, defendants' motion to dismiss Walsh's Privacy Act claim will be granted.

## C.   **Criminal Statutes**

Walsh brings claims for defendants alleged violations of several criminal statutes.  However, "[a] private party has no right to enforce federal criminal statutes." Balawajder v. Jacobs, 220 F.3d 586, 586 (5th Cir. 2000).[12]  Nor do the criminal statutes at issue provide for a private right of enforcement.  See Three Rivers Ctr. for Ind. Living v. Hous. Auth., 382 F.3d 412, 420 (3d Cir. 2004) ("A court must look to the text of the statute to see if it states, by its terms, that a private party may bring suit to enforce it."); Am. Tel. & Tel. Co. v. M/V Cape Fear, 967 F.2d 864, 869 (3d Cir. 1992) ("Congress punishes breaches of duties embedded in criminal statutes, but punishment does not require implication of a private enforcement

---

[12]  See also Cok v. Cosentino, 876 F.2d 1, 1 (1st Cir. 1989) ("[A] private citizen has no authority to initiate a federal criminal prosecution."); Mamer v. Collie Club of Am., Inc., 229 F.3d 1164, 1164 (10th Cir. 2000) ("[P]rivate citizens cannot prosecute criminal actions.") Higgins v. Neal, 52 F.3d 337, 337 (10th Cir. 1995) ("[C]ourts universally endorse the principle that private citizens cannot prosecute criminal actions."); Am. Postal Workers Union v. Ind. Postal Sys. of Am., Inc., 481 F.2d 90, 93 (6th Cir. 1973) ("[There exists a] firmly established principle that criminal statutes can only be enforced by the proper authorities of the United States Government and a private party has no right to enforce these sanctions."); Conn. Action Now, Inc. v. Roberts Plating Co., 457 F.2d 81, 86-87 (2d Cir. 1972) ("It is a truism, and has been for many decades, that in our federal system crimes are always prosecuted by the Federal Government, not as has sometimes been done in Anglo-American jurisdictions by private complaints."); United States ex rel. Savage v. Arnold, 403 F. Supp. 172, 176 n.2 (E.D. Pa. 1975) ("[A] firmly established principle [is] that criminal statutes can only be enforced by the proper authorities of the United States Government and a private party has no right to enforce these sanctions." (citation omitted)).

remedy in every instance."); <u>see also</u> <u>Am. Postal Workers Union v. Ind. Postal Sys.</u>

<u>of Am., Inc.</u>, 481 F.2d 90, 93 (6th Cir. 1973) ("[T]he general rule is that a private right

of action is not maintainable under a criminal statute.").  And as has been

discussed, any arguable tort that may arise from the alleged conduct is precluded

by the <u>Feres</u> doctrine and/or the applicable statute of limitations.[13]  Accordingly,

defendants' motion to dismiss the criminal claims will be granted.

**IV.**   <u>**Conclusion**</u>

Because Walsh's claims pursuant to the Federal Tort Claims Act, and to 42

U.S.C. §§ 1983 and 1986 are barred by the <u>Feres</u> doctrine, defendants' motion to

dismiss these claims will be granted.  The motion to dismiss will also be granted as

to the Privacy Act claim, as defendant Jones is not a proper party and because the

statute of limitations has run.  Finally, there is no private right of action to enforce

criminal statutes, and these claims will be dismissed.

An appropriate order will issue.


   /s/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge


Dated:      June 9, 2006

---

[13]  <u>See</u> <u>supra</u> Part III.A.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RORY M. WALSH, | : | CIVIL ACTION NO. 1:05-CV-0818 |
| | : | |
| Plaintiff | : | (Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| THE UNITED STATES OF AMERICA, | : | |
| et al., | : | |
| | : | |
| Defendants | : | |

## ORDER

AND NOW, this 9th day of June, 2006, upon consideration of defendants'

motion to dismiss (Doc. 32), and for the reasons set forth in the accompanying

memorandum, it is hereby ORDERED that:

1.  The motion to dismiss (Doc. 32) is GRANTED in part and DENIED in part as follows:

    a.  The motion is GRANTED with respect to all claims against defendants Jerry D. Humble, Michael J. Byron, Thomas F. Ghormley, Richard M. Wenzell, Special Agent West, M.W. McErlean, and Paul D. Roy.  See Feres v. United States, 340 U.S. 135, 146 (1950).

    b.  The motion is DENIED with respect to Fourth and Fifth Amendment claims against James L. Jones, Jr., and the United States Department of Navy relating to alleged burglary of plaintiff's residence in 2005.  See Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971).

2.  The stay of discovery imposed by the order of court dated May 17, 2006 (Doc. 58) is LIFTED.

3.  On or before July 14, 2006, defendants shall respond to discovery requests relating to the alleged burglary of plaintiff's residence in 2005.

4.  A pretrial and trial schedule shall issue by future order of court.

 /s/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge