## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RORY M. WALSH,** | : | **CIVIL ACTION NO. 1:05-CV-0818** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| **v.** | : | |
| | : | |
| **THE UNITED STATES OF AMERICA,** | : | |
| **THE DEPARTMENT OF THE NAVY,** | : | |
| **MAJ. GEN. JERRY D. HUMBLE,** | : | |
| **LT. GEN. MICHAEL J. BYRON,** | : | |
| **MAJ. GEN. THOMAS F. GHORMLEY,** | : | |
| **GEN. JAMES L. JONES, JR.,** | : | |
| **COL. RICHARD M. WENZELL,** | : | |
| **SPECIAL AGENT WEST,** | : | |
| **COL. M.W. MCERLEAN, and** | : | |
| **LT. COL. PAUL D. ROY,** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

Presently before the court are cross-motions for summary judgment

(Docs. 269, 273) with respect to the claims of plaintiff, Rory M. Walsh ("Walsh"),

against defendant General James L. Jones, Jr. ("Jones").  For the reasons that

follow, defendant's motion will be granted and plaintiff's motion will be denied.

I.   <u>**Statement of Facts**</u>[1]

Walsh served in the United States Marine Corps from 1975 through 1996 and

was repeatedly recognized and decorated for his service.  (Doc. 288 ¶¶ 1-2, 5;

Doc. 281 ¶¶ 1-2,5.)  Walsh instituted the instant action on April 25, 2005.  (<u>See</u>

Doc. 1.)  He amended the complaint on October 21, 2005.  (<u>See</u> Doc. 30.)  In the

amended complaint, Walsh alleges that Jones violated his Fourth and Fifth

---

[1] <u>See</u> <u>infra</u> Part II.  Many of Walsh's statements of material facts either
contain no "references to the parts of the record that support the statements," <u>see</u>
L.R. 56.1, or are wholly unsupported by the parts of the record cited.  For example,
paragraph seven of Walsh's statement of material facts states:

> Fully aware of the strength of Plaintiff's claim and the liability of
> Humble, Jones using Department of the Navy intelligence forces under
> his direct control ordered those same intelligence forces into Plaintiff's
> residence during the evening of 3-4 March 05 to remove
> correspondence to/from Jones and all of Plaintiff's military hats (hair
> follicles are the easiest way to trace arsenic poisoning, but are not the
> only way).  Those same Naval forces also ordered Humble to dispose of
> his considerable assets in anticipation of his ultimate arrest and
> confinement for assault and attempted murder.  Exhibit (d) refers. . . .

(Doc. 288 ¶ 7.)  As an initial matter, the court notes that all claims against Humble
were previously dismissed.  (<u>See</u> Doc. 65.)  The only exhibit referenced in this
statement of material fact simply shows that Humble sold his house on April 12,
2005.  (<u>See</u> Doc. 288, Ex. D.)  It does not refer to Jones, nor demonstrate that Jones
ordered others into Walsh's residence to remove correspondence and military hats
in March 2005.  Indeed, many of Walsh's statements are mere allegations, not
factual statements.  (<u>See, e.g.</u>, Doc. 288 ¶¶ 30-31 ("Plaintiff believes, and therefore
avers, that Naval Intelligence Agents, acting directly or indirectly upon order by or
the authority of defendant Jones . . . ."); <u>id.</u> ¶¶ 32, 36, 38 (same)).  For purposes of the
instant motions, the court will not accept as true any unsupported statements or
allegations in Walsh's statement of material facts.  However, the court carefully
reviewed all evidence submitted by Walsh during the course of the above-captioned
action.  <u>See</u> <u>infra</u> note 9.

Amendment rights[2] when Jones, or Naval Intelligence Agents instructed by Jones,

broke into Walsh's residence and stole correspondence and Walsh's military hats in

March 2005.[3]  (Id. ¶¶ 92, 111-14.)  On August 29, 2007, Walsh supplemented the

amended complaint with the following Fourth and Fifth Amendment allegations

against Jones:[4]

> (1)  On October 27, 2005, Walsh and his sons discovered a Naval
> Intelligence agent in Walsh's garage without authorization and
> the agent fled upon being discovered.

> (2)  On numerous occasions, Naval Intelligence agents unlawfully
> entered Walsh's residence and damaged a computer disk
> marked NIS, searched through Walsh's medications, substituted
> antibiotic ointment for his sons' toothpaste, viewed work papers
> related to the above-captioned action, and removed two
> discovery responses.

---

[2] The orders of court dated June 6 and October 30, 2006 dismissed all other
claims and defendants.  (See Doc. 65 at 15 (denying motion to dismiss only with
respect to the Fourth and Fifth Amendment claims against Jones, the United
States, and the Navy); Doc. 155 (dismissing claims against the United States and the
Navy)); see also infra note 12.

[3] Walsh was in New York on the night at issue.  Walsh's then-neighbor heard
Walsh's garage door open and close that night and saw footprints in the snow
leading up to Walsh's garage.  However, the neighbor did not see who made the
footprints and did not know if anyone was inside Walsh's garage after the door
closed.  Other neighbors witnessed a couple arguing outside of Walsh's residence
that night. (Doc. 288 ¶¶ 8-9, 11; Doc. 281 ¶¶ 8-9, 11; Doc. 288, Ex. E.)  Upon returning
from New York, Walsh reported the incident to the York Area Regional Police.  (Id.,
Ex. F.)

[4] To the extent that the supplement to the first amended complaint (Doc. 229)
raises any state law claims, summary judgment in favor of Jones on these claims is
appropriate for the same reasons that summary judgment in favor of Jones is
appropriate on the Fourth and Fifth Amendment claims.  See infra Part III.

    (3)       On October 11, 2006, Naval Intelligence agents attempted to strike Walsh with their vehicle and forced him off the road into nearby bushes as Walsh was taking an evening run.

    (4)       On July 14, 2007, Naval Intelligence agents unlocked and opened the kitchen window in Walsh's residence (a third-floor apartment) and may have entered his residence.

    (5)       On July 14, 2007, Naval Intelligence agents monitored Walsh's telephone calls and did not release the monitor/lock on his phone number.

    (6)       On July 27, 2007, Walsh discovered a Naval Intelligence agent surveilling his residence by peering into the kitchen window from the roof of Walsh's apartment complex.[5]

(Doc. 229.)[6]  On January 4, 2008, Walsh and Jones filed cross-motions for summary judgment (Docs. 269, 273) on these claims.  The motions have been fully briefed and are ripe for disposition.

---

[5] In all of these supplemental allegations, Walsh avers that the Naval Intelligence agents were "acting directly or indirectly upon order by or authority of" Jones.  (See Doc. 229 ¶¶ 94-102.)

[6] Walsh incorrectly states that these additional claims are unopposed by Jones.  (See Doc. 269 ¶ 3; Doc. 278 ¶ 15.)  That Jones did not oppose Walsh's request to supplement the amended complaint does not indicate that Jones does not oppose the supplemental allegations.  (See Doc. 227 at 3 ("It is submitted that the proposed supplements are, like the existing averments concerning break-ins, meritless. However, in the interest of judicial economy, [Jones] will not oppose the supplementation of [Walsh's] amended complaint with post-amended complaint allegations of break-ins, so that all claims may be addressed in [Jones'] dispositive motion . . . .")).  On September 14, 2007, Jones answered Walsh's supplement by denying the additional allegations.  (See Doc. 230.)  Likewise, Jones' motion for summary judgment recognizes these additional claims and seeks judgment on all of Walsh's claims.  (See Docs. 273, 274.)

II.   <u>Standard of Review</u>

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact" and for which a jury trial would be an empty and unnecessary formality.  <u>See</u> FED. R. CIV. P. 56(c).  It places the burden on the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief.  <u>Pappas v. City of Lebanon</u>, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250-57 (1986); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-89 (1986); <u>see also</u> FED. R. CIV. P. 56(c), (e).  Only if this threshold is met may the cause of action proceed.  <u>Pappas</u>, 331 F. Supp. 2d at 315.

The court is permitted to resolve cross-motions for summary judgment concurrently.  <u>InterBusiness Bank, N.A. v. First Nat'l Bank of Mifflintown</u>, 318 F. Supp. 2d 230, 235 (M.D. Pa. 2004) (describing concurrent resolution of cross-motions for summary judgment as "a formidable task"); <u>see also</u> <u>Irvin v. United Mine Workers of Am. Health & Ret. Funds</u>, No. 05-1072, 2007 WL 539646, at *1 (W.D. Pa. Feb. 15, 2007); 10A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2720 (3d ed. 1998).  When doing so, the court is bound to view the evidence in the light most favorable to the non-moving party with respect to each

motion.  FED. R. CIV. P. 56; see also Strategic Learning, Inc. v. Wentz, No. 05-467,

2006 WL 3437531, at *4 (M.D. Pa. Nov. 29, 2006).

## III.   **Discussion**

Walsh brings a Bivens[7] action against Jones for Jones' alleged violations of

Walsh's Fourth and Fifth Amendment rights.  "A Bivens action, which is the federal

equivalent of the § 1983 cause of action against state actors, will lie where the

defendant has violated the plaintiff's rights under the color of federal law."[8]  Brown

v. Philip Morris, 250 F.3d 789, 800 (3d Cir. 2001); see also Egervary v. Young, 366

F.3d 238, 246 (3d Cir. 2004).

In the matter *sub judice*, the court finds that, given the evidence of record, a

reasonable jury could *not* conclude that Jones was directly or indirectly involved in

the alleged conduct.  Having thoroughly reviewed the evidence submitted by Walsh

for the instant motions and for the other motions filed during the course of this

action,[9] the court concludes that the record is devoid of any evidence demonstrating

the "personal involvement" of Jones in the alleged conduct, whether direct or

---

[7] Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971)
(stating cause of action against federal officials).

[8] Jones apparently concedes, for purposes of the instant motions only, that he
acting "under color of federal law" at all times relevant hereto.

[9] In this opinion, the court does not explicitly refer to the contents of each
exhibit submitted by Walsh during the course of the above-captioned action.
However, the court conducted an exhaustive review of all such evidence and has
considered this evidence in its summary judgment disposition.

indirect.[10]  See Harper v. Beard, No. 2:05-CV-01803-LDD, 2007 WL 4242214, at *7

n.20 (E.D. Pa. Nov. 28, 2007) ("Personal involvement is necessary to sustain a cause

of action under Bivens . . . ." (citing Balter v. United States, 172 F. App'x 401, 403

(3d Cir. 2006), Richards v. Pennsylvania, 196 F. App'x 82, 85 (3d Cir. 2006), and Ruiz

Rivera v. Riley, 209 F.3d 24, 28 (1st Cir. 2000))).  The court recognizes and

commends Walsh's long and decorated service to this country.  However, his

conclusory statements and speculation regarding Jones' personal involvement in

---

[10] Nothing in the evidence submitted by Walsh contradicts Jones' sworn
verification, which states:  "I neither conducted nor ordered a "break-in" of the
plaintiff's residence.  I did not in any manner order or instruct military or civilian
agents or personnel to break into the plaintiff's residence."  (Doc. 274, Ex. B.)  The
court notes that this sworn verification predates some of Walsh's allegations.
However, Walsh's evidence does not support his assertion that Jones was directly or
indirectly involved in the subsequent events.  See infra note 11.
        Walsh argues that he "has not been afforded ample opportunity through
discovery to garner supportive evidence of his claims."  (Doc. 278 at 4.)  He states
that his "efforts in discovery were blocked, frustrated, ignored and illegally
destroyed" and that he was "repeatedly denied access to photographs of NIS agents
deployed against him after having recognized [them]."  (Id. at 4-5; see also id. at 10.)
These arguments are without merit.  Walsh had every opportunity, and indeed
availed himself of these opportunities, to bring discovery issues before the court.
For example, in June 2007, Walsh sought to compel the Navy to produce the name,
rank, and photograph of all Marine Corps CI personnel assigned to various
locations at various times.  (See Doc. 199, Ex. A at 10.)  Walsh contended that he
recognized the perpetrators of the incidents and needed the requested documents
to identify them.  The court denied this broad request because Walsh did not offer
any characteristics of the alleged perpetrators to limit his request, despite having
recognized them (i.e., the request was a "fishing expedition").  (See Doc. 226 at 6.)
Importantly, the court did not preclude Walsh from amending his request to the
Navy for this identification information and the discovery period continued for over
three months after the court's ruling.  In fact, the court granted a subsequent
motion from Walsh to extend the discovery deadline.  (See Doc. 246.)

the alleged conduct are insufficient to reach a jury.[11]   Accordingly, the court will

---

[11] Walsh's statement of facts and legal arguments are replete with unsupported conclusions and speculation that Jones ordered the break-ins and other alleged conduct.  (See, e.g., Docs. 270, 283, 288); see also supra note 1. Although the evidence, including police reports, neighbors' depositions, and Walsh's affidavit, may be sufficient for a reasonable jury to conclude that certain aspects of the alleged conduct occurred, there is simply no proof whatsoever that Jones was personally involved.  For example, Walsh retained an expert to examine an envelope and correspondence related to this action.  As an initial matter, the court notes that Walsh does not offer an affidavit from the alleged expert, and the court cannot consider an unsworn report by an alleged expert on a motion for summary judgment.  See Fowle v. C & C Cola, 868 F.2d 59, 67 (3d Cir. 1989) ("The substance of this report was not sworn to by the alleged expert.  Therefore, the [expert] report is not competent to be considered on a motion for summary judgment."); see also FED. R. CIV. P. 56(e).  Even if considered, the expert report merely concludes that the envelope was genuine, that Walsh "did indeed receive the . . . envelope and any contents that were enclosed," and that the documents examined were either genuine or copies.  (See Doc. 288, Ex. P.)  The report fails to make any connection between the envelope and Jones.  Walsh also produces numerous photographs in support of his accusations against Jones.  For example, Walsh has submitted photographs of his bathroom showing a tube of antibiotic ointment allegedly substituted in place of his sons' toothpaste as evidence that agents were unlawfully in his residence.  (See Doc. 278, Ex. V; see also Doc. 288 ¶ 16 ("The photographic evidence of NIS agents having replaced Plaintiff's children's toothpaste with antibiotic ointment [is] already on file with this Court.")).  Nothing in these photographs, or others submitted by Walsh, demonstrates NIS agents in Walsh's residence, let alone any involvement on the part of Jones.  Walsh posits that Jones' involvement is established because:  (1) Jones controlled Naval forces, (2) the items allegedly stolen from his residence were items, including discovery documents, related to the above-captioned action, and (3) the alleged conduct occurred at critical times of this litigation.  Such a conclusion would require far more substantial evidence than, for example, a misplaced tube of toothpaste. Suffice it to say that Walsh's evidence is woefully insufficient for a reasonable jury to conclude that Jones was involved in the alleged conduct.  The court finds that no reasonable jury could reach such a conclusion given the evidence of record.  See supra note 9.

grant Jones' motion for summary judgment and will deny Walsh's motion for

summary judgment.[12]

---

[12] Walsh incorrectly states that the 42 U.S.C. § 1986 claim against Major General Thomas F. Ghormley remains. (See Doc. 270 at 2.) The orders of court dated June 6 and October 30, 2006 (Docs. 65, 155) dismissed *all* but the Fourth and Fifth Amendment claims against Jones. See supra note 3. Nevertheless, Walsh argues that the court only dismissed claims relating to conduct that occurred while Walsh was on active duty. He contends that the § 1986 claim for Ghormley's alleged actions in 1999 and 2005 remains because Walsh retired in 1996. (See Doc. 270 at 9.) This contention is without merit. Section 1986 has an express one-year statute of limitations. See 42 U.S.C. § 1986; see also Lopez v. Brady, No. 4:CV-07-1126, 2008 WL 2310943, at *5 (M.D. Pa. June 3, 2008). Walsh instituted the above-captioned action on April 25, 2005. (See Doc. 1.) Therefore, a § 1986 claim based on alleged conduct in 1999 is time-barred. Moreover, "[v]iolations of 42 U.S.C. § 1986 by definition depend on a pre-existing violation of § 1985." Shehee v. City of Wilmington, 67 F. App'x 692 (3d Cir. 2003) (citing Clark v. Clabaugh, 20 F.3d 1290, 1295 & n.5 (3d Cir.1994)). To establish a *prima facie* case under § 1985(3), a plaintiff must allege: "(1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons . . . [of] the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States." Ridgewood Bridgeport. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 253-54 (3d Cir. 1999); see also Farber v. City of Patterson, 440 F.3d 131, 134 (3d Cir. 2006). The amended complaint (Doc. 30) is devoid of allegations sufficient to state a § 1985 claim. First, it does not identify a protected class to which Walsh belongs. Second, it does not allege that "any 'racial or class based discriminatory animus'" motivated defendants' conduct. See Cranbury Brook Farms v. Twp. of Cranbury, 226 F. App'x 92, 95 (3d Cir. 2007) (citing Lake v. Arnold, 112 F.3d 682, 685 (3d Cir. 1997)). To the contrary, it is clear that the alleged actions by Ghormley and others were *not* motivated by animus towards Walsh's status in any class, but rather were motivated by animus towards Walsh himself. Therefore, Walsh cannot establish a violation of § 1985. Accordingly, dismissal, without leave to amend, of all § 1986 claims, including those against Ghormley and Jones, is appropriate.

**IV.**    **<u>Conclusion</u>**

For the foregoing reasons, Jones' motion for summary judgment will be

granted and Walsh's motion for summary judgment will be denied.  An appropriate

order will issue.


<u>S/ Christopher C. Conner</u>
CHRISTOPHER C. CONNER
United States District Judge


Dated:        June 10, 2008

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RORY M. WALSH,** | : | **CIVIL ACTION NO. 1:05-CV-0818** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| **v.** | : | |
| | : | |
| **THE UNITED STATES OF AMERICA,** | : | |
| **THE DEPARTMENT OF THE NAVY,** | : | |
| **MAJ. GEN. JERRY D. HUMBLE,** | : | |
| **LT. GEN. MICHAEL J. BYRON,** | : | |
| **MAJ. GEN. THOMAS F. GHORMLEY,** | : | |
| **GEN. JAMES L. JONES, JR.,** | : | |
| **COL. RICHARD M. WENZELL,** | : | |
| **SPECIAL AGENT WEST,** | : | |
| **COL. M.W. MCERLEAN, and** | : | |
| **LT. COL. PAUL D. ROY,** | : | |
| | : | |
| **Defendants** | : | |

## <u>ORDER</u>

AND NOW, this 10th day of June, 2008, upon consideration of the motions for summary judgment (Docs. 269, 273), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1.  Defendant's motion for summary judgment (Doc. 273) is GRANTED.

2.  Plaintiff's motion for summary judgment (Doc. 269) is DENIED.

3.  The Clerk of Court is directed to enter JUDGMENT in favor of defendant General James L. Jones, Jr. and against plaintiff on all claims.

4.  The Clerk of Court is directed to CLOSE this case.

  S/ Christopher C. Conner  
CHRISTOPHER C. CONNER  
United States District Judge